THOMAS BURRIS,

VS.

WALTER W. JACKSON AND EDWARD M. BURRIS, EXECUTORS OF THE LAST WILL AND TESTAMENT OF EDWARD BURRIS, DECEASED, AND GEORGE V. PEVERLY.

*Kent, March T.* 1899.

Where the executors, acting under the direction of the will, sold from the land of the testator enough timber measuring fifteen inches and upwards across the stump, to obtain lumber to repair and improve buildings on the farm imperatively needed for the protection of its ordinary crops, and cash to pay the debts and funeral expenses; and the complainant, a disinherited son of the testator, having unsuccessfully contested the will before the Register of Wills was proceeding to obtain a review by the Superior Court; the complainant being one of eleven heirs at law who would inherit the land as coparceners if the contest of the will should prevail; and the executors had given bond and there was no suggestion that they were insolvent, or that they were unable to pay any damages that might be recovered against them at law; an injunction to stay waste will not be awarded against the executors and the purchaser of the timber.

Courts of equity will not grant an injunction at the suit of one tenant in common, coparcener or joint tenant against another, except in special circumstances, as where the waste is destructive to the estate, or where the respondent is sworn to be insolvent.

BILL FOR AN INJUNCTION TO STAY WASTE.—The complainant was the son of Edward Burris, by whose will he had been disinherited. He had filed a petition for review of the probate of the will and was seeking to remove the proceedings to the Superior Court.

The executors under the will, who were respondents, had sold to the other respondent, George V. Peverly, the growing

and standing timber on testator's farm and the last named respondent was cutting, or about to cut and remove it from the farm, having paid for it in full and having incurred much expense in preparing to cut it.

If the will should be set aside as the result of the pending proceedings, the complainant would be one of eleven heirs at law of his father, and as such would be entitled to a share as tenant in common in coparcenary of the farm on which the timber was located.

The bill sought an injunction to restrain the cutting, felling and removing of the timber until all proceedings in review of the will should be terminated.

The facts are further fully set forth in the opinion.

A rule to show cause why a preliminary injunction should not issue having been awarded, it was heard on bill, answer, affidavits and exhibits.

*John D. Hawkins*, for the complainant, contended that the injunction should be granted as prayed for in the bill and that the cutting of timber was an injury of an irreparable nature, and remedial in equity by whomsoever committed. This was decided in the case of *Fleming, Trustee, vs. Collins, Admr.*, 2 *Del. Ch.* 230, and this authority should be conclusive.

*J. Frank Biggs*, for the respondent Peverly, who having paid for the timber and incurred large expense for cutting it, was mainly interested in resisting the application for an injunction.

The complainant in this cause has a sufficient and adequate remedy at law. *Rev. Code* (1893) 665, *ch.* 88; *id.* 670; *secs.* 12, 13, 14; *Waples et al. vs. Waples*, 2 *Harring.* 281.

Equity will not interfere where there is an adequate remedy at law. *Rev. Code* (1893) 704, *sec* 1; *Carlisle vs. Fleming*, 1 *Harring.* 421, 432; *Beeson Admr. vs. Elliott Exr.*, 1 *Del. Ch.* 368, 386; *Hilliard Inj.* (3d *Ed*) 24.

A court of equity requires reasonable diligence on the part of those seeking its aid, and discourages *laches* by making it a bar to relief, therefore a plaintiff on filing his bill for an injunction must make it appear that he has used reasonable

diligence in invoking the aid of the Court, otherwise the relief will be denied. *Hilliard, Inj.* (3d *Ed.*) 34, *sec.* 43; 2 *High, Inj.* 7, *sec.* 7; *Gray vs. Ohio, &c.*, 1 *Grant* 412; *Field vs. Bearmont*, 3 *Madd.* 61; *Burden vs. Stien*, 27 *Ala* 104; *Long vs. Cross*, 5 *Jones Eq.* 323; *Whitney vs. Union Ry. Co.*, 11 *Gray* 359; *Duhn vs. Caldwell*, 28 *Ga.* 117; *Atty. Gen. vs. Sheffield G. C. Co.*, 3 *De Gex M. & G.* 304; *Pillow vs. Thompson*, 20 *Tex.* 206; *Dana vs. Valentine*, 5 *Met.* (*Mass.*) 8; *Russ vs. Wilson*, 22 *Me.* 207; *Central R. R. Co. vs. Standard Oil Co.*, 33 *N. J. Eq.* 127; *Reid vs. Gifford*, 6 *Johns. Ch.* 19; *Tash vs. Adams*, 10 *Cush.* 252; *Bradfield vs. Dewell*, 48 *Mich.* 9; *Morris vs. Edwards*, 62 *Tex.* 205; *Dibble vs. Truelock*, 12 *Fla.* 185; *Ramsey vs. Perley*, 34 *Ill.* 504; *Faulkner vs. Campbell*, *Morr.* (*Ia.*) 148; *Semple vs. McGatagan*, 18 *Miss.* 98; *Brandon vs. Green*, 7 *Humph.* (*Tenn.*) 130; *Binney's Case*, 2 *Bland.* 99.

Where defendants claim both title and possession, equity will not restrain the cutting of timber, even though it constitutes the chief value of the premises. *High, Inj.*, (2d *Ed.*) *sec.* 674; *Hilliard, Inj.* (3d *Ed.*) 335, *sec.* 4; *Shaeve vs. Black*, 3 *Green Ch.* 177; *Kerlin vs. West*, *id.* 449; *Smith vs. Wilson*, 10 *Cal.* 528; *Higgins vs. Woodward, Hopk.* 342.

A bill for a special injunction to restrain a party in possession and claiming adversely, from cutting timber must not set forth that the threatened injury would be irreparable, but must also state how it would be so, that the Court may see clearly that such would be the result. *Hilliard, Inj.* (3d *Ed.*) 356, *sec.*11; *Thompson vs. Williams*, 1 *Jones Eq.* 176; *Bogey vs. Shute*, *id.* 180; *Keller et al. vs. Ogsbury*, 121 *N.Y.* 362.

The proper thinning out of trees so as to enhance the value of the remaining timber does not constitute waste. *High, Inj.* (2d *Ed.*) 437 *sec.* 673; *Cowley vs. Wellesley*, L. R. 1 *Eq. Cas.* 656.

And an injunction will not be allowed against the removal of timber already cut on the premises, since it has ceased to be a part of the realty, but is personal property, for which trover will lie. *Van Wyck vs. Alliger*, 6 *Barb.* 507; *Watson vs. Hunter*, 5 *Johns. Ch.* 169.

Upon an application to dissolve an injunction it is proper for the Court to balance the relative convenience and inconvenience which would arise from its continuance or its dissolution; and if, upon weighing such considerations, the continuance of the injunction is likely to work more mischief than would result from its dissolution, it is proper to grant the motion to dissolve. *High, Inj.* (2d *Ed.*) 965, *secs.* 1495, 1497; *Atty. Gen. vs. Mayor of Liverpool,* 1 *Myl. & Cr.* 171.

*George A. Elliott,* for the respondents Walter W. Jackson and Edward M. Burris, executors of Edward Burris, deceased, joined in resisting the application, although the executors, having received the consideration for the sale of the timber, were less directly affected by the suit than the other respondent.

THE CHANCELLOR:—

The bill prayed for an injunction to stay waste in cutting down and carrying away timber. It stated that the complainant is a son of Edward Burris, who died June 10, 1898, leaving a "paper writing purporting to be a will," which was proved before the Register of Wills in New Castle County, June 16, 1898; that he has since filed a petition of review "and in the prosecution of the said review, he has excepted to the rulings of the Register of Wills in that behalf, and is about to remove the said proceedings and cause of action to the Superior Court."

The bill further states that the said Edward Burris, at the time of his death, owned *inter alia* a tract of land in Kenton Hundred, in Kent County, containing about two hundred and fifty acres, and that the said respondents, Walter W. Jackson and Edward M. Burris, acting under the powers conferred upon them by the alleged last will and testament of the said Edward Burris, as executors, have sold to the respondent George V. Peverly "certain growing and standing timber on the said farm for a very inadequate price, and that the said George V. Peverly is now cutting, or is about to cut and fell the growing and standing timber on said farm and is about to remove the same from said farm;" and in paragraph 8, he alleges that the said "cutting and felling and removing

of said timber will very seriously impair the value of said farm;" * * * and that "the complainant is liable to suffer irreparable damages and injuries if the said Walter W. Jackson, Edward M. Burris and George V. Peverly, or any one of them, or any person for them or for any of them, shall be permitted to either cut, fell or remove any timber or trees from said farm until all proceedings in review of the will are terminated."

On presentation of the bill, June 15, 1899, a rule was granted returnable on the twenty-fourth day of the same month, at chambers in Dover, requiring the respondents to show cause why a preliminary injunction should not be awarded restraining them from cutting and removing the timber, and an order restraining them in like manner until the hearing and determination of the rule.

The rule was heard on bill, answer, affidavits and exhibits, the exhibits consisting of a copy of the alleged will and of the contract between the respondent George V. Peverly and the respondents Walter W. Jackson and Edward M. Burris, executors of the will of Edward Burris.

The answer, after reciting the will and stating that the executors have given bond in the sum of fourteen hundred dollars, and that the Register of Wills had refused to grant the review asked for by the complainant, unless he would advance the sum of one hundred dollars to secure the costs, and that he afterwards refused to send an issue to the Superior Court, denies that the timber had been sold for an inadequate price, and alleges that it had been valued by a competent expert at six hundred dollars, and that by the written agreement made October 11, 1898, they had sold it for five hundred and fifty dollars in cash and three thousand feet of lumber, to be sawed by the said Peverly free of charge, and used by them, for necessary repairs and improvements of buildings on said farm, indispensable for saving the crops.

It is further alleged that of the cash consideration of five hundred and fifty dollars, one hundred dollars had been paid by the said Peverly October 11, 1898, when the sale was made, and the balance before the filing of the bill of complaint,

and that the whole of it had been applied to "paying the debts and funeral expenses of the testator as directed by his will," the direction of the will in that regard being:

"I do hereby authorize, empower and direct my executors to sell either at public or private sale such part or portions of my real estate or woodland situate in Kent County, State of Delaware, as they shall deem advisable and necessary for the payment of my debts and other expenses."

The answer also denies that "cutting and felling and removing the said timber will very seriously impair the value of said farm," and alleges "that the said complainant will not suffer irreparable damage and injury by reason of the sale of said timber, even if the said last will and testament of said testator should be set aside."

It also appears from the copy of the contract filed with the answer, that no timber was to be cut measuring less than fifteen inches across the stump, and it is alleged in an affidavit made by the respondent Peverly "that the cutting of the said timber of not less than fifteen inches across the stump would be a proper thinning out of trees so as to enhance the value of the remaining timber on said farm." He further alleges that he "first began to cut timber on said farm during the month of November, 1898, and that the complainant, Thomas Burris, then had knowledge of the fact of the sale of the said timber and that the same was being cut and removed from the farm; that the said George V. Peverly since the first day of January, 1899, has expended about the sum of two thousand dollars in making preparations to cut, fell and remove the said timber."

The complainant does not contradict any of these allegations in the answer or affidavits of respondents, and the affidavits filed by him consist solely of explanations of his delay in prosecuting his contest of the will, which he has attacked on the ground that his father was not mentally competent to make a will, and included a detailed statement of the proceedings had before the Register of Wills in New Castle County in relation to it.

It also appears from the copy of the will filed, and the

admissions of counsel at the hearing, that there were eleven children of the said testator, Edward Burris, living at the time of his death, and, therefore, even if the complainant should ultimately be successful in having the will of his father set aside, he would only be a coparcener with ten other children, including the respondent Edward M. Burris, holding nothing more than an eleventh interest in said farm as such tenant in common or coparcener.

Now, it is true that beginning with Lord Eldon (although see *Smallman vs. Onions*, 3 *Bro.* 621) the Court of Chancery has granted injunctions to stay waste at the suit of one tenant in common egainst another, but only under special circumstances, and with great hesitation.

In *Hole vs. Thomas*, 7 *Ves.* 589, 590, Lord Eldon says:

"I never knew an instance of an application to stay waste by one tenant in common against another: one tenant in common having a right to enjoy, as he pleases." He concludes, however, "I have no objection to grant an injunction against cutting saplings and any timber trees or underwood at unseasonable times, until answer or farther order; for that is destruction."

Again, in *Twort vs. Twort*, 16 *Ves.* 127, 130, Lord Eldon uses the following language:

"I am much struck with the circumstance, that my experience in this Court does not furnish me with a single instance of an injunction between tenants in common or coparceners; and, if from that I could undertake to say, the Court has never granted an injunction in such a case, there would be very strong negative evidence, that this Court has not thought it right to follow by analogy from time to time the common and statute law upon waste, as between persons, standing in those relations. I am also positively certain, that this motion has been made, and refused occasionally; and have a strong recollection, that I have myself refused to grant an injunction between tenants in common. Where a case of positive and actual destruction appeared, I granted an injunction; as that was not the legitimate exercise of the

enjoyment, arising out of the nature of the party's title to that, which belonged to him and the other party."

It appeared in this case that the tenant in common committing the waste was also the occupying tenant of the other, and Lord Eldon concludes, "On that ground I shall grant the injunction; stating expressly in the order that he is occupying tenant to the plaintiff; and restraining him from committing any waste upon the premises, which he holds as such occupying tenant. That is a safe principle; which by its necessary operation will prevent his committing any waste."

In *Hawley vs. Clowes*, 2 *Johns. Ch.* 122, Chancellor Kent granted an injunction to stay waste between tenants in common while a bill for partition of the very land was pending, and he remarks that "pending the suit it appears to be extremely fit that the tenant in common in possession, should not be permitted to strip the land of its timber."

In that case counsel had cited *Goodwyn vs. Spray*, (*Dickens* 677) decided in 1786 and *Smallman vs. Onions*, (3 *Bro.* 621) and the Chancellor said, "The last cited case admitted the authority of the Court to grant the writ between tenants in common, in special cases, as where the defendant was sworn to be insolvent; and Lord Eldon, in the subsequent cases of *Hole vs. Thomas*, (7 *Ves.* 589) and of *Twort vs. Twort* (16 *Ves.* 128) admitted the propriety and necessity of this power in the Court, between tenants in common, where the waste was destructive to the estate, and not within the usual and legitimate exercise of enjoyment. The case, therefore, of the exercise of this power, must rest in sound discretion; it is not a case of want of jurisdiction."

Story, in his great treatise on Equitable Jurisprudence, *vol.* 2, *sec.* 916, citing the three cases from which I have quoted in a note, states the equitable rule in practically the same language as that used by Chancellor Kent and emphasises the principles governing the rule by connecting it with the preceding section which defines and illustrates equitable waste.

This section of Story is quoted in part in *Dodd vs. Watson*, 4 *Jones Eq.* 51, decided in 1858. In that case Judge

Pearson says, "The law applicable to this question, is settled, and is thus stated in 2 *Story's Com.*, *sec.* 916: 'Although Courts of Equity will not interfere by injunction to prevent waste in cases of tenants in common, or coparceners or joint tenants, because they have a right to enjoy the estate as they please, yet they will interfere in special cases; as where the party committing the waste is insolvent, or where the waste is destructive of the estate, and not within the *usual legitimate exercise* of the right of enjoyment of the estate.' "

There is no reported case in this State of a bill for an injunction to stay waste between tenants in common, but the law applicable to the subject, as is correctly stated by Judge Pearson, is settled beyond question. The great authorities I have quoted have established and formulated it, and they have been implicitly followed in all the treatises and encyclopedias treating the subject and by all the well considered cases.

In *Fleming, Trustee, vs. Collins, Adm'r.*, 2 *Del. Ch.* 230, the single case cited by complainant's counsel from our own reports an injunction was granted to stay waste by a trespasser cutting timber under a claim of title, and it in no respect involves any of the questions raised in the case pending before me.

The facts as presented at the hearing of the rule, and already summarized by me, seem to be as free from contradiction or obscurity as the law, and the determination of the rule becomes a simple matter, when these facts are submitted to the tests implied in the rules authoritatively formulated by Eldon, Kent and Story.

In conclusion therefore I will simply restate the facts.

It appears from the pleadings, affidavits and exhibits that the executors of the will of Edward Burris, one of whom is a coparcener with the complainant, acting under the direction of his father's regularly probated will, sold from the farm in this County just timber enough measuring fifteen inches and upwards across the stump, to obtain lumber to repair and improve buildings on the farm imperatively needed for the protection and preservation of its ordinary crops and

.cash sufficient to pay the debts and funeral expenses of the testator, the father of the complainant.

The complainant states that he intends to contest this will, and it appears that he has already contested it unsuccessfully before the Register of Wills.

It further appears, however, that the only result of a successful contest of the will would be that the complainant as one of the eleven children of the testator, Edward Burris, would be possessed, as an heir at law, of an eleventh interest in the farm on which stands the timber, from the sale of which has been received five hundred and fifty dollars in cash, every dollar of which has already been applied to his father's debts and funeral expenses, which amounted to between six hundred and seven hundred dollars, while the only available personal asset was a personal note of one hundred and seventy-five dollars.

It further appears that as executors, the respondents, Walter W. Jackson and Edward M. Burris, his brother-in-law and brother, have given bond in the sum of fourteen hundred dollars, and there is no suggestion that they are insolvent, or that they are not otherwise able to pay any damages that might be recovered against them in an action at law.

Is it not obvious that upon this state of facts, no case whatever is presented which would justify this Court in enjoining the felling and removal of the timber in question? This seems to me to be so manifest from the mere statement of the facts in view of the principles already laid down, that I deem it entirely unnecessary to enter into them more fully, or to analyze and discuss the questions of no inconsiderable difficulty and interest which might be involved, if the interests of the complainant and the character of the timber transactions were such as to give him the necessary standing in this Court. I will deny the motion for a preliminary injunction and discharge the rule.

Let the order be entered accordingly.